IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
EASTERN DIVISION

| | | |
|---|---|---|
| CALVIN TYRONE SHAW, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CASE NO.: 3:15-cv-868-GMB |
| | ) | |
| NANCY A. BERRYHILL, Acting | ) | |
| Commissioner, Social Security | ) | |
| Administration, | ) | |
| | ) | |
| Defendant. | ) | |

## **MEMORANDUM OPINION AND ORDER**

On September 18, 2013, Plaintiff Calvin Tyrone Shaw applied for disability insurance benefits under Title II of the Social Security Act, alleging a disability onset date of March 1, 2013. Shaw's claim was denied at the initial administrative level. Shaw then requested and received a hearing before an Administrative Law Judge ("ALJ"). The ALJ held a hearing on October 23, 2014 and denied Shaw's claims on July 6, 2015. Shaw requested a review of the ALJ's decision by the Appeals Council, and that request was denied on November 3, 2015. As a result, the ALJ's decision became the final decision of the Commissioner of the Social Security Administration (the "Commissioner") as of November 3, 2015.

The case is now before the court for review pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3). Under 28 U.S.C. § 636(c)(1) and Rule 73 of the Federal Rules of Civil Procedure, the parties have consented to the full jurisdiction of the undersigned United States Magistrate Judge. Based on its careful review of the parties' arguments, the relevant

case law, and the record as a whole, the court concludes that the decision of the Commissioner is supported by substantial evidence and based upon the proper legal standards, and is therefore due to be AFFIRMED.

## I. STANDARD OF REVIEW

The court reviews a Social Security appeal to determine whether the Commissioner's decision "is supported by substantial evidence and based upon proper legal standards." *Lewis v. Callahan*, 125 F.3d 1436, 1439 (11th Cir. 1997). The court will reverse the Commissioner's decision if it is convinced that the decision was not supported by substantial evidence or that the proper legal standards were not applied. *Carnes v. Sullivan*, 936 F.2d 1215, 1218 (11th Cir. 1991). The court "may not decide the facts anew, reweigh the evidence, or substitute its judgment for that of the Commissioner," but rather it "must defer to the Commissioner's decision if it is supported by substantial evidence." *Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1997) (internal quotation marks omitted). "Even if the evidence preponderates against the Secretary's factual findings, [the court] must affirm if the decision reached is supported by substantial evidence." *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990). Moreover, reversal is not warranted even if the court itself would have reached a result contrary to that of the factfinder. *See Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991).

The substantial evidence standard is met "if a reasonable person would accept the evidence in the record as adequate to support the challenged conclusion." *Holladay v. Bowen*, 848 F.2d 1206, 1208 (11th Cir. 1988) (quoting *Boyd v. Heckler*, 704 F.2d 1207, 1209 (11th Cir. 1983)). The requisite evidentiary showing has been described as "more

than a scintilla, but less than a preponderance." *Bloodsworth*, 703 F.2d at 1239. The court must scrutinize the entire record to determine the reasonableness of the decision reached and cannot "act as [an] automaton[] in reviewing the [Commissioner's] decision." *Hale v. Bowen*, 831 F.2d 1007, 1010 (11th Cir. 1987). Thus, the court must consider evidence both favorable and unfavorable to the Commissioner's decision. *Swindle v. Sullivan*, 914 F.2d 222, 225 (11th Cir. 1990).

The court will reverse the Commissioner's decision on plenary review if the decision applies incorrect law or fails to provide the court with sufficient reasoning to determine that the Commissioner properly applied the law. *Id.* (citing *Keeton v. Dep't of Health & Human Servs.*, 21 F.3d 1064, 1066 (11th Cir. 1994)). There is no presumption that the Commissioner's conclusions of law are valid. *Id.*

## II. STATUTORY AND REGULATORY FRAMEWORK

To qualify for disability benefits, a claimant must show the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); 42 U.S.C. § 416(i). A physical or mental impairment is "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrated by medially acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423(d)(3). Shaw bears the burden of proving that he is disabled, and he is responsible for producing evidence to support his claim. *See Ellison v. Barnhart*, 355 F.3d 1272, 1276 (11th Cir. 2003).

A determination of disability under the Social Security Act requires a five-step analysis. 20 C.F.R. § 404.1520(a). The Commissioner must determine in sequence:

(1) Is the claimant presently unable to engage in substantial gainful activity?
(2) Is the claimant's impairment(s) severe?
(3) Does the claimant's impairment(s) satisfy or medically equal one of the specific impairments set forth in 20 C.F.R. Pt. 404, Subpt. P, App. 1?
(4) Is the claimant unable to perform his former occupation?
(5) Is the claimant unable to perform other work given his residual functional capacity, age, education, and work experience?

*See Frame v. Comm'r, Soc. Sec. Admin.*, 596 F. App'x 908, 910 (11th Cir. 2015). "An affirmative answer to any of the above questions leads either to the next question, or, on steps three and five, to a finding of disability. A negative answer to any question, other than step three, leads to a determination of 'not disabled.'" *McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11th Cir. 1986) (quoting 20 C.F.R. § 416.920(a)−(f)). "Once the finding is made that a claimant cannot return to prior work the burden of proof shifts to the Secretary to show other work the claimant can do." *Foote v. Chater*, 67 F.3d 1553, 1559 (11th Cir. 1995) (citing *Gibson v. Heckler*, 762 F.2d 1516 (11th Cir. 1985)).

## III. FACTUAL BACKGROUND AND ADMINISTRATIVE PROCEEDINGS

Shaw was 41 years old at the time of the ALJ's decision. R. 41. He is married and lives with his wife and child in Tallassee, Alabama. R. 42. He has a high school diploma and also received training as an electronics technician. R. 45–46. At the time of the hearing, he was enrolled in four classes at Southern Union Community College and sought a degree in business administration. R. 43. He claims to suffer from serious complications resulting

primarily from keloids on his skin.[1] R. 48–55. Specifically, Shaw claims that the keloids are painful, itchy, and impair his sleep and mobility. R. 48–55. Shaw also suffers from arthritis in his right knee, foot spurs, sleep apnea, and obesity. R. 16 & 19–23. In the past, Shaw worked as a radio communications technician in the military, a satellite television installer, electrical meter reader, and a machine operator. R. 26 & 55–61. He last worked in February of 2012, when he was terminated from his employment as a machine operator for an automotive company. R. 58.

Following an administrative hearing, the ALJ found that Shaw suffered from the following severe impairments under 20 C.F.R. § 404.1520(c): "obesity, bilateral plantar calcaneal spurs and pes planus, degenerative joint disease of the right knee, keloids, pseudo folliculitis barbae, and sleep apnea." R. 15. Despite this finding, the ALJ concluded, at step three of the analysis, that none of Shaw's impairments—nor a combination of his impairments—met or medically equaled the severity of one of those listed in the applicable regulations. R. 15. The ALJ further found, at steps four and five, that Shaw has the residual functional capacity ("RFC") to perform "sedentary work."[2] R. 16–26. Specifically, the ALJ concluded that Shaw can perform sedentary work with the following limitations:

---

[1] Keloids are raised scars that "grow much larger than the wound that caused the scar." *Keloids: Overview*, AMERICAN ACADEMY OF DERMATOLOGY, https://www.aad.org/public/diseases/bumps-and-growths/keloids (last visited July 13, 2017). As they grow, they can be itchy and painful. *Id.* "If the scar makes moving difficult, treatment can help a person regain some movement." *Id.* Treatment can be challenging, and may include steroid injections, surgical removal, cryotherapy, and radiation. *See id.* Keloids are benign and are not inherently harmful. *See id.*

[2] "Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met." 20 C.F.R. § 404.1567(a).

> No pushing and pulling of foot with the right lower extremity. He can occasionally climb ramps and stairs, balance, stoop, kneel, crouch, and crawl. He cannot climb ladders or scaffolds. He should avoid exposure to unprotected heights and hazardous, moving mechanical parts. He should avoid concentrated exposure to extreme cold, extreme heat, wetness and humidity, vibration, uneven terrain, and direct sunlight. His is limited to occasional interaction with the public.

R. 16. Ultimately, the ALJ concluded that Shaw was not disabled within the meaning of the Social Security Act from March 1, 2013, his alleged disability onset date, through the date of the ALJ's decision, and the ALJ denied his claims. R. 27–28.

## IV. DISCUSSION

Shaw presents just one issue on appeal, arguing that the ALJ did not properly consider whether his skin disorder may be medically equivalent to one of the applicable listings by neglecting to address flareups of his skin condition.[3] *See* Doc. 11 at 7. Specifically, Shaw contends that "a skin disorder may be medically equivalent to Listing 8.00 *et seq.* when over time the flareups result in extensive skin lesions." Doc. 11 at 7. According to Shaw, the ALJ did not address the frequency, seriousness, and duration of Shaw's flareups, nor their impact on his overall level of functioning. *See* Doc. 11 at 7. Shaw does not cite to any legal authority beyond the listing itself.[4]

---

[3] Despite the fact that Shaw has other severe impairments that garnered significant discussion in the medical records, including arthritis of the right knee and sleep apnea, the only impairment discussed in his brief is the skin disorder. *See generally* Doc. 11. The court will limit its discussion accordingly, as any ancillary issues are waived. *See Access Now, Inc. v. Southwest Airlines Co.*, 385 F.3d 1324, 1330 (11th Cir. 2004) ("[A] legal claim or argument that has not been briefed before the court is deemed abandoned and its merits will not be addressed.").

[4] Shaw's argument—which consists mostly of conclusory statements and spans just one and one-half pages—is dangerously close to constituting a wholesale waiver. *See N.L.R.B. v. McClain of Ga., Inc.*, 138 F.3d 1418, 1422 (11th Cir. 1998) ("Issues raised in a perfunctory manner, without supporting arguments and citations to authorities, are generally deemed to be waived."). However, because Shaw once proceeded *pro se* in this action, the court will address the merits of his argument.

The listings contained in section 8.00 of Subpart P of Part 404 of the Social Security regulations cover skin disorders. The Social Security Administration bases its "assessment of security on the extent of your skin lesions, the frequency of flareups of your skin lesions, how your symptoms (including pain) limit you, the extent of your treatment, and how your treatment affects you." 20 C.F.R. § Pt. 404, Subpt. P, App. 1 § 8.00. Shaw apparently concedes that his skin disorder does not meet any listing, but argues that his condition is medically equivalent to one of the listings contained in § 8.00 because, over time, his flareups result in extensive skin lesions under § 8.00(C)(2). Doc. 11 at 7. The specific section of the regulation follows:

> If you have skin lesions, but they do not meet the requirements of any of the listings in this body system, you may still have an impairment that prevents you from doing any gainful activity when we consider your condition over time, especially if your flareups result in extensive skin lesions, as defined in C1 of this section. Therefore, if you have frequent flareups, we may find that your impairment(s) is medically equal to one of these listings even though you have some periods during which your condition is in remission. We will consider how frequent and serious your flareups are, how quickly they resolve, and how you function between flareups to determine whether you have been unable to do any gainful activity for a continuous period of at least 12 months or can be expected to be unable to do any gainful activity for a continuous period of at least 12 months. We will also consider the frequency of your flareups when we determine whether you have a severe impairment and when we need to assess your residual functional capacity.

20 C.F.R. § Pt. 404, Subpt. P, App. 1 § 8.00(C)(2).

In *Wilson v. Barnhart*, 284 F.3d 1219 (11th Cir. 2002), the Eleventh Circuit discussed the significance of the Social Security regulations' listings:

> The Listing of Impairments describes, for each of the major body systems, impairments which are considered severe enough to prevent a person from doing any gainful activity. *See* 20 C.F.R. § 404.1525(a). Part A of the Listing

> of Impairments contains medical criteria that apply to adults age 18 and over. *See* 20 C.F.R. § 404.1525(b); *see also* 20 C.F.R. § 404, Subpt. P, App. 1.
>
> To "meet" a Listing, a claimant must have a diagnosis included in the Listings and must provide medical reports documenting that the conditions meet the specific criteria of the Listings and the duration requirement. *See* 20 C.F.R. § 404.1525(a)-(d). To "equal" a Listing, the medical findings must be "at least equal in severity and duration to the listed findings." *See* 20 C.F.R. § 404.1526(a). If a claimant has more than one impairment, and none meets or equals a listed impairment, the Commissioner reviews the impairments' symptoms, signs, and laboratory findings to determine whether the combination is medically equal to any listed impairment. *See id.*

*Wilson*, 284 F.3d at 1224 (footnote omitted). "While Appendix 1 must be considered in making a disability determination, it is not required that the [ALJ] mechanically recite the evidence leading to her determination." *Hutchinson v. Brown*, 787 F.2d 1461, 1463 (11th Cir. 1986). Of course, it is the claimant's burden to demonstrate that one or more of his impairments meets or equals a listing. *Barron v. Sullivan*, 924 F.2d 227, 229 (11th Cir. 1991).

Shaw's argument that the ALJ erred in failing to consider his flareups is unpersuasive for a number of reasons. First, § 8.00 "provides that frequent flareups 'may' result in a finding of medical equivalence *when various factors are considered*," particularly the factors described above. *Carr v. Astrue*, 2013 WL 360600, at *5 (M.D. Ala. Jan. 30, 2013); *Tichon v. Astrue*, 2009 WL 1174670, at *3 (W.D. Pa. Apr. 29, 2009) (dismissing a similar argument where the plaintiff "did not [establish that her skin disorder equaled a listed impairment], and she has not given the Court reason to believe that she could fare better on remand"). Here, beyond stating in conclusory fashion that the ALJ erred and that his keloids medically equal one of the listings in § 8.00, Shaw "has not made

any attempt to demonstrate that any of these factors would qualify him for a finding of medical equivalence." *Id.* Each of the listings in § 8.00 requires the claimant to establish that he has extensive skin lesions that persist for at least three months even with treatment. *See* 20 C.F.R. § Pt. 404, Subpt. P, App. 1 §§ 8.02–08. On appeal, Shaw has not made this showing. *See* Doc. 11 at 7–8. Moreover, since the ALJ may implicitly conclude that an impairment does not meet or equal a listing, the ALJ need not "mechanically" recite evidence or evaluate certain factors to buttress that finding. *See Hutchinson*, 787 F.2d at 1463; *Prince v. Comm'r, Soc. Sec. Admin.*, 551 F. App'x 967, 971 (11th Cir. 2014). Therefore, to the extent that the ALJ did not explicitly discuss these factors in her opinion, her failure to do so did not constitute reversible error.

Finally, even if it is implicit, substantial evidence supports the ALJ's decision that Shaw's skin impairment does not medically equal one of the listings of § 8.00. *See Prince*, 551 F. App'x at 970; *Rafferty v. Colvin*, 2014 WL 1875339, at *6 (N.D.N.Y. May 9, 2014) ("In short, although the ALJ did not provide a detailed explanation regarding his Step Three determination, there is sufficient reasoning elsewhere in the decision to support his conclusion that [the claimant's] skin condition does not satisfy Listing 8.03."); *Shell v. Astrue*, 2012 WL 2191282, at 10–12 (E.D. Mo. May 14, 2012) (observing that "an ALJ's failure to address a specific listing is not reversible error if [the] record supports his overall conclusion," and concluding that substantial evidence supported the ALJ's decision); *Tichon*, 2009 WL 1175670, at *3–4 (same). With the exception of restating the medical evidence of record, Shaw does nothing to demonstrate how the ALJ's listing determination is not supported by substantial evidence. *See* Doc. 11 at 7–8. Accordingly, the court

concludes that Shaw hos not established that his skin impairment medically equals one of the listings in § 8.00.

The medical evidence does demonstrate that Shaw has a long and well-documented history of keloids on his head, face, neck, and chest. Since at least 2008, treatment has included excision, radiation, and medication. *E.g.*, R. 199–286. Shaw relies on the consultative examination conducted by Dr. Alan M. Babb on November 25, 2013 without explaining how that examination leads to the inexorable conclusion that his condition medically equals a listing.[5] Doc. 11 at 7–8; *see Robinson v. Astrue*, 365 F. App'x 993, 995 (11th Cir. 2010) ("The mere existence of an impairment does not reveal the extent to which it limits a claimant's ability to work, nor does it undermine the ALJ's determination regarding her ability to work.") (citation and internal quotation marks omitted). Dr. Babb concluded that Shaw had "some of the most extensive keloid scarring" that he had seen. R. 283. He also observed that the keloids "have continued to progress," and are "horrific, extremely large," and "very disfiguring." R. 283. However, the ALJ noted that Dr. Babb's examination revealed that Shaw had a normal gait and that there was no reduced range of motion in his neck. R. 284–85. Otherwise, the ALJ pointed out that Dr. Babb did not provide an opinion regarding Shaw's specific functional limitations. R. 283–85. Further, Dr. Babb's objective findings were generally unremarkable. R. 283–85.

---

[5] Indeed, Shaw's argument consists of a recitation of Dr. Babb's findings followed by the conclusory statement that "[g]iven the medical evidence of record, including the attached photographs, the Claimant clearly has a skin disorder medically equivalent to Listing 8.00 *et seq.* and thus the decision of the ALJ that the Claimant does not have a skin disorder medically equivalent to Listing 8.00 *et seq.* is not supported by substantial evidence." Doc. 11 at 8.

The ALJ also discussed the Department of Veterans Affairs Compensation and Pension evaluation by Dr. Jennifer Lapointe in August of 2013, who concluded that Shaw's skin condition did not prevent him from performing sedentary work. *E.g.*, R. 370 & 386. According to Dr. Lapointe, Shaw's keloids limited the range of motion in his neck, which was incorporated into Dr. Lapointe's findings as well as the ALJ's assessment of Shaw's RFC.[6] R. 15–16 & 389. Dr. Lapointe also concluded that Shaw's frequent medical appointments limited his ability to work, though the ALJ noted that the "treatment records do not document that [Shaw] is receiving treatment [as] frequently as alleged," and that there are no treatment records from his primary dermatologist after September 5, 2014. R. 24. Moreover, the ALJ noted that Shaw "has been generally successful in controlling" his symptoms, which is supported by the evidence indicating that his symptoms have been at least somewhat controlled by medication and successful excisions. In sum, the ALJ's conclusion that Shaw's "contentions regarding the severity of [his condition], and the related functional restrictions, are not fully supported" is bolstered by both Dr. Lapointe and Dr. Babb's reports. R. 25.

Finally, the ALJ noted that Shaw's activities of daily living "are not limited to the extent one would expect, given the complaints of disabling symptoms and limitations." R. 25. Shaw testified that he is enrolled in four college courses and studies for at least two hours per day, tutors and supervises at an after-school program, drives his daughter and

---

[6] As already noted, the ALJ limited Shaw's RFC to sedentary work and concluded that, among other things, he cannot climb ladders or scaffolds, should avoid unprotected heights and hazardous mechanical parts, and should avoid exposure to extreme temperatures, humidity, vibration, uneven terrain, and direct sunlight. R. 16.

mother to activities, attends church services, and takes himself to medical appointments. R. 43–46, 53–55 & 157–58. Of course, with some limitations, the ALJ may take a claimant's activities of daily living into account in her assessment of a claimant's RFC or credibility. *See, e.g.*, *Stacy v. Comm'r, Soc. Sec. Admin.*, 654 F. App'x 1005, 1009 (11th Cir. 2016) (finding that the ALJ's RFC assessment was supported by claimant's daily activities, including driving a car, using a computer, and watching television). On this record, the court concludes that substantial evidence supports the ALJ's decision.

## V.  CONCLUSION

Based on the foregoing, the undersigned concludes that the Commissioner's decision is supported by substantial evidence and based upon the proper legal standards. It is therefore ORDERED that the decision of the Commissioner denying benefits is AFFIRMED. A final judgment will be entered separately.

DONE on the 13th day of July, 2017.

_____
GRAY M. BORDEN
UNITED STATES MAGISTRATE JUDGE